UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

SANTANDER BANK, N.A.,

       Plaintiff,

vs.                                                                        Civil Action No. 14-13133

DURHAM COMMERCIAL CAPITAL CORP. and
CONNOLLY, GEANEY, ABLITT and WILLARD,
a Professional Corporation,

       Defendants.
_____/

DURHAM COMMERCIAL CAPITAL CORP. and
MAASAI HOLDING, LLC,

       Counter-Claimants,

vs.

SANTANDER BANK, N.A.,

       Counter-Defendant.
_____/

**DURHAM COMMERCIAL CAPITAL CORP.'S ANSWER AND AFFIRMATIVE
DEFENSES TO SANTANDER BANK, N.A.'S AMENDED COMPLAINT**

**and**

**DURHAM COMMERCIAL CAPITAL CORP.'S AND
MAASAI HOLDING, LLC'S COUNTERCLAIM**

**-and**

<u>**DEMAND FOR JURY TRIAL**</u>

      Defendant, Durham Commercial Capital Corp. ("Durham"), by and through its undersigned counsel, pursuant to Fed. R. Civ. P., including 7, 8, 12 and 13, and Local Rules 5.1

and 5.2, answers and asserts affirmative defenses to the Amended Complaint [D.E. 1] filed by Plaintiff, Santander Bank, N.A. ("Santander").

## Answer

As to the unnumbered paragraph in the Amended Complaint under the heading "Introduction," Durham admits that it entered into a factoring relationship with Connolly, Geaney, Ablitt & Willard, a Professional Corporation ("Connolly") which, *inter alia*, gave Durham a security interest in Connolly's accounts and, after due notice was given as authorized by the Uniform Commercial Code, required Connolly's client Santander to make payments directly to Durham rather than to Connolly. Durham admits that Santander has now brought the instant action purporting to seek, *inter alia*, declaratory relief as to the parties' rights and obligations to each other. Durham denies the remainder of the allegations.

1. Durham is without knowledge of the allegations contained in paragraph 1 of the Amended Complaint.

2. Durham admits the allegations contained in paragraph 2 of the Amended Complaint.

3. As to paragraph 3 of the Amended Complaint, Durham admits that Connolly had its principal place of business in Massachusetts and that its place of incorporation is Rhode Island.

4. Durham admits the allegations contained in paragraph 4 except is without knowledge as to the alleged amount in controversy.

5. Durham denies that venue is proper under 28 U.S.C. § 1391(a)(2) as alleged in paragraph 5, but admits the propriety of same under 28 U.S.C. § 1391(b).

6. Durham lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 6 of the Amended Complaint.

7. Durham lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 7 of the Amended Complaint.

8. Durham admits the allegations contained in paragraphs 8 and 9 of the Amended Complaint.

9. As to paragraph 10 of the Amended Complaint, Durham states that Exhibit "A" speaks for itself, and Durham denies any characterizations thereof.

10. Durham denies the allegations contained in paragraphs 11, 12, and 13 of the Amended Complaint.

11. To the extent that paragraphs 14 and 15 of the Amended Complaint purport to quote portions of certain Bar Associations' ethics opinions, Durham states that the authentic opinions speak for themselves, and Durham denies any characterizations thereof.

12. Durham admits the allegations contained in paragraphs 16, 17, and 18 of the Amended Complaint.

13. Durham denies the allegations contained in paragraph 19 of the Amended Complaint.

14. As to paragraph 20 of the Amended Complaint, Durham admits that it obtained a security interest in Connolly's accounts receivable, including those representing the monies owed by Santander to Connolly. Durham denies the remainder of the allegations. [check]

15. As to paragraph 21 of the Amended Complaint, Durham denies that it received the monies it is owed from Santander. Durham lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations.

16. As to paragraph 22 of the Amended Complaint, Durham lacks knowledge or information sufficient to form a belief about whether Santander "rejects the assertion that it owes Durham" amounts or about the truth of any alleged damages that Connolly caused Santander. Durham denies the remainder of the allegations.

17. As to paragraph 23 of the Amended Complaint, Durham repeats and realleges its responses to the previous paragraphs of the Amended Complaint.

18. Durham denies the allegations contained in paragraphs 24 of the Amended Complaint.

19. As to paragraph 25 of the Amended Complaint, Durham admits that Santander is seeking to have this Court make certain declarations, but Durham denies the veracity of said declarations.

20. Inasmuch as Count II for Indemnity against Connolly is not being asserted against Durham, Durham does not respond to paragraphs 26 and 27 of the Amended Complaint.

21. As to paragraph 28 of the Complaint, Durham repeats and realleges its responses to the previous paragraphs of the Amended Complaint.

22. Durham admits the allegations contained in paragraph 29 of the Amended Complaint.

23. Durham denies the allegations contained in paragraph 30 of the Amended Complaint.

24. As to paragraph 31 of the Amended Complaint, Durham admits that it entered into a factoring agreement with Connolly with regard to accounts receivable owing from Santander to Connolly. Durham denies the remainder of the allegations.

25. As to paragraph 32 of the Amended Complaint, Durham admits that it sought to collect money from Santander pursuant to the factoring agreement between Durham and Connolly. Durham denies the remainder of the allegations.

26. Durham lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 33 of the Amended Complaint.

27. Durham denies the allegations contained in paragraphs 34, 35, 36, 37, 38, 39, and 40 of the Amended Complaint.

## First Affirmative Defense
### (Failure to State a Cause of Action as to All Counts--Violation of Fed. R. Civ. P. 10(b))

As and for a first affirmative defense, Durham asserts that Santander failed to state a cause of action as to all of the counts because the Amended Complaint violates Federal Rule of Civil Procedure 10(b)'s requirement that each claim be founded on a separate transaction or occurrence. Specifically, the Amended Complaint impermissibly incorporates by reference all preceding paragraphs and counts in each successive count, and Santander alleges two causes of action within Count III for Unfair and Deceptive Acts and Practices. With respect to Count III, Santander has commingled its claim for Unfair and Deceptive Acts and Practices with a claim for conspiracy. *See* Amended Complaint, ¶¶ 34-37, which reference an alleged conspiracy between Connolly and Durham.

## Second Affirmative Defense
### (Failure to State a Cause of Action as to All Counts-- Failure to Allege Satisfaction of Conditions Precedent)

As and for a second affirmative defense, Durham asserts that Santander failed to state a cause of action as to all of the counts because the Amended Complaint fails to allege satisfaction of all conditions precedent to bringing the instant action.

### Third Affirmative Defense
### (Failure to State a Cause of Action as to Count I--No Actual and Justiciable Controversy)

As and for a third affirmative defense, Durham asserts that Santander is not entitled to the declaratory relief it seeks in Count I because Santander failed to sufficiently allege facts to support that an actual and justiciable controversy exists between Durham and Santander.  In Count I for declaratory relief, Santander seeks a declaration that Durham's factoring agreement with Connolly is void and unenforceable as against Santander.  As the basis for seeking this declaration, Connolly alleges that the factoring agreement violates the Massachusetts Bar Association's ethics rules, and that, given Durham's attempts to collect from Santander, this creates an actual and justiciable controversy.  The facts alleged do not support the existence of an actual and justiciable controversy between Durham and Santander.  At least with respect to Durham, the Massachusetts Bar Association's ethics opinions governing the recommended ethical conduct of lawyers--*i.e.*, governing Connolly's actions, **not** Durham's actions--cannot invalidate a legal contract entered into between Durham and Connolly granting Durham a security interest in Connolly's accounts receivable.  Even if Santander's allegations were correct that Connolly violated the Massachusetts Bar Association's ethics opinion, the ethics opinion is not binding on Durham, nor may any violation of same by Connolly divest Durham of its security interest in Connolly's accounts receivable, including monies owed by Santander.  Accordingly, Santander failed to state a cause of action for Count I for declaratory relief because Santander failed to adequately allege the existence of an actual and justiciable controversy between Santander and Durham.

**Fourth Affirmative Defense**
**(Lack of Privity as to Count I)**

As and for a fourth affirmative defense, Durham asserts that Santander is not entitled to the declaratory relief it seeks in Count I because Santander lacks privity with Durham with respect to the factoring agreement that is the subject of Count I. In Count I for declaratory relief, Santander seeks a declaration that Durham's factoring agreement with Connolly is void and unenforceable as against Santander, whose monies owed to Connolly were among the accounts receivable in which Durham acquired a security interest. Essentially, Santander seeks to have this Court declare invalid a contract to which Santander is not a party. Because Santander is not a party to the factoring agreement and thus lacks privity with Durham, Santander is not entitled to declaratory relief with respect to the parties' rights and obligations under the factoring agreement.

**Fifth Affirmative Defense**
**(Lack of Standing as to Count I)**

As and for a fifth affirmative defense, Durham asserts that Santander is not entitled to the declaratory relief it seeks in Count I because Santander lacks standing to assert said claim. In Count I for declaratory relief, Santander seeks a declaration that Durham's factoring agreement with Connolly is void and unenforceable as against Santander, whose monies owed to Connolly were among the accounts receivable in which Durham acquired a security interest. Essentially, Santander seeks to have this Court declare invalid a contract to which Santander is not a party. Because Santander is not a party to the factoring agreement, Santander lacks standing to seek declaratory relief with respect to the factoring agreement.

## Sixth Affirmative Defense
**(Failure to State a Cause of Action as to Count III--Failure to Plead with Particularity)**

As and for a sixth affirmative defense, Durham asserts that Santander failed to state a cause of action for Count III for unfair and deceptive acts and practices because Santander failed to plead same with particularity as required by Federal Rule of Civil Procedure 9(b). In Count III, Santander generally alleges that Durham and Connolly engaged in a conspiracy to and did in fact: (a) violate Connolly's duty to maintain the confidentiality of Connolly's dealings with Santander; (b) make unauthorized disclosures of Santander's privileged communications and information; (c) enable Connolly to engage in self-dealing; and (d) implement a scheme resulting in an unauthorized fee sharing agreement between Connolly and Durham. *See* Amended Complaint, ¶¶ 34-37. Nowhere in the Amended Complaint does Santander explain: (a) how Connolly's alleged duty to maintain the confidentiality of its dealings with Santander was violated and the specific role Durham had in so violating said duty; (b) when and what types of privileged communications and information were allegedly disclosed and the specific role Durham had in doing so; (c) the nature of the alleged self-dealing and Durham's specific role in the alleged self-dealing; and (d) how the specific factoring agreement at issue in the Amended Complaint constitutes an unauthorized fee-sharing agreement. Because Santander's vague and general allegations do not meet the heightened pleading standard required by Rule 9(b), Santander failed to state a cause of action for Count III for unfair and deceptive acts and practices.

**Seventh Affirmative Defense**
**(Failure to State a Cause of Action as to Count III--Failure to Allege Damages)**

As and for a seventh affirmative defense, Durham asserts that Santander failed to state a cause of action for Count III for unfair and deceptive acts and practices because Santander failed to allege that it was damaged by any of Durham's allegedly unfair and deceptive acts and practices.  *See* M.G.L. c. 93A § 11.

**Eighth Affirmative Defense**
**(Estoppel and Waiver)**

As and for an eighth affirmative defense, Durham asserts that Santander either waived or should be estopped to seek any of the relief requested in its Amended Complaint due to its dilatory and inconsistent conduct.  More specifically, after having first received Durham's Notice of Assignment on January 7, 2014, marked as Exhibit 5, at no time on or thereafter until after demand for payment was made on Santander on July 8, 2014, marked as Exhibit 6, did Santander ever issue any form of communication to Durham objecting to the assignment or otherwise seeking to contest Durham's right to receive payment.  Durham reasonably relied on Santander's acquiescence and failure to object to the Notice of Assignment and has been harmed and detrimentally relied upon Santander's acquiescence.

**Ninth Affirmative Defense**
**(Lack of Privity as to Count III)**

As and for a ninth affirmative defense, Durham asserts that Santander is not entitled to the relief it seeks in Count III because Santander lacks privity with Durham with respect to the factoring agreement that is the subject of Count III.  Santander's claim in Count III for unfair and deceptive acts and practices under M.G.L. c. 93A § 11 is based on the allegations that Durham's factoring agreement with Connolly is void and

unenforceable as against Santander, whose monies owed to Connolly were among the accounts receivable in which Durham acquired a security interest. In an action pursuant to M.G.L. c. 93A § 11, privity between the plaintiff and defendant is required except where the parties are engaged in more than a minor or insignificant business relationship. Here, Durham and Santander are not in privity of contract with respect to the factoring agreement. Additionally, Durham and Santander are not engaged in more than a minor or insignificant business relationship. The only relationship between Durham and Santander is that Durham acquired an interest in collecting the legal fees that Santander owed to Connolly. This does not rise to the level of dispensing with the privity requirement of M.G.L. c. 93A § 11. Accordingly, Santander is not entitled to relief under M.G.L. c. 93A § 11.

## Tenth Affirmative Defense
### (Lack of Standing as to Count III)

As and for a tenth affirmative defense, Durham asserts that Santander is not entitled to the relief it seeks in Count III because Santander lacks standing to assert said claim. Santander's claim in Count III for unfair and deceptive acts and practices under M.G.L. c. 93A § 11 is based on the allegations that Durham's factoring agreement with Connolly is void and unenforceable as against Santander, whose monies owed to Connolly were among the accounts receivable in which Durham acquired a security interest. Santander is not a party to the factoring agreement. In order to have standing to bring such a claim under M.G.L. c. 93A § 11 where no privity of contract exists, Connolly and Durham must be engaged in a business relationship that is more than minor or insignificant. The only relationship between Durham and Santander is that Durham acquired an interest in collecting the legal fees

that Santander owed to Connolly. This does not rise to the level of dispensing with the privity requirement of M.G.L. c. 93A § 11. Accordingly, because Santander is not a party to the factoring agreement, Santander lacks standing to seek relief under M.G.L. c. 93A § 11 with respect to the factoring agreement.

WHEREFORE, based upon the affirmative defenses raised, Defendant, Durham Commercial Capital Corp., respectfully requests this Court to enter judgment in its favor on the Amended Complaint and grant any other and further relief that this Court deems just and proper.

## COUNTERCLAIM

Counter-Claimants, Durham Commercial Capital Corp. ("Durham") and Maasai Holdings, LLC ("Maasai"), by and through their undersigned counsel, assert this counterclaim against Counter-Defendant, Santander Bank, N.A. ("Santander").:

### Introduction

Durham and Maasai bring this action: (a) against Connolly for breach of a written contract to purchase accounts receivable; and (b) against Santander for breach of its duty under Article 9 of the Uniform Commercial Code to satisfy its obligation to pay the outstanding and unpaid accounts.[1]

### Party Allegations

1. Counter-Claimant Durham is a New York corporation with its principal place of business in Pittsford, New York.

2. Counter-Claimant Maasai is a New York limited liability company formed under the laws of New York with its principal place of business in Pittsford, New York and whose member is an individual who is a citizen of the State of New York.

---

[1] Pursuant to the Uniform Commercial Code, the term "Account" . . . means (i) a right to payment of a monetary obligation, whether or not earned by performance, (A) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, (B) for services rendered or to be rendered, . . .

3. Counter-Defendant Santander is a national bank with its principal place of business in Wilmington, Delaware.

### Other Interested Entities

4. Connolly is a Rhode Island corporation with a principal place of business having been in Woburn, Massachusetts.

### Jurisdiction and Venue Allegations

5. For the purposes of this Counterclaim, this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332 inasmuch as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. To the extent the claims against Santander are compulsory counterclaims, no separate jurisdictional basis is required for asserting same herein. *See* Fed. R. Civ. P. 13(a).

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the District of Massachusetts because a substantial part of the events or omissions giving rise to the claims occurred in Massachusetts, Santander has an office in Massachusetts, and Connolly has its principal place of business in Massachusetts. Further, inasmuch as the claims against Santander are compulsory counterclaims, no separate basis for venue is required for asserting same herein. *See* Fed. R. Civ. P. 13(a).

### Conditions Precedent and Retention of Counsel

7. All conditions precedent to this action have occurred, have been waived, or have been otherwise excused.

8. Durham and Maasai have retained counsel to represent their interests in this matter and are required to pay said counsel a reasonable fee for services rendered.

**General Allegations**

A.     The Durham Relationship with Connolly.

9.     Durham is in the factoring business, which business entails the contractual purchasing of accounts. In the factoring business, the "Factor," in this case Durham, purchases accounts from the party with whom it has a contractual relationship (hereinafter "Factoring Client"), in this case Connolly. After paying the purchase price for the accounts, Durham, the Factor, awaits payment from the Factoring Client's customers, one of which is Santander. The Factoring Client's customers are known in both the UCC and the factoring industry as "Account Debtors."[2] [3]

10.    On or about November 7, 2012, Connolly (through its predecessor name, Ablitt Scofield, P.C.) entered into a Non-Recourse Receivables Purchase Contract and Security Agreement (hereinafter "Factoring Agreement"), pursuant to which Durham purchased certain of Connolly's accounts ("Purchased Accounts"). A true and correct copy of the Factoring Agreement is attached hereto as **Exhibit "1"** except as to matters which are deemed proprietary or confidential which have been redacted, and is incorporated herein by reference.

11.    In addition to the sale of accounts, Connolly also granted to Durham, as security for all present and future obligations of Connolly, a continuing security interest in the Purchased Accounts and a security interest in certain specified collateral which included non-purchased accounts and all proceeds of those accounts (hereinafter "Collateral"). *See,* Exhibit "1" at section 4.

---

[2] Pursuant to the Uniform Commercial Code, the term "Account Debtor" means a person obligated on an <u>account</u>….

[3] All capitalized words in this pleading shall have the same meaning as defined by the Uniform Commercial Code or as specifically defined herein.

12.     On November 14, 2012 at 2:56 p.m., Durham caused a UCC-1 Financing Statement to be filed with the Rhode Island Secretary of State, identified by number 201211848760, which resulted in Durham having perfected both its ownership rights as well as its security interest in, *inter alia*, all of Connolly's assets, including the purchased and non-purchased accounts. Thereafter, on October 10, 2013, Durham caused a UCC-3 Amended Financing Statement to be filed with the Rhode Island Secretary of State, identified by number 201313086600. True and correct copies of the duly filed UCC-1 and UCC-3 Financing Statements are attached hereto as **Exhibit "2"** and **Exhibit "3,"** respectively, and are incorporated herein by reference.

13.     Connolly has breached the Factoring Agreement by:

(a)     having breached its promise to and by having violated section 4.1 of the Factoring Agreement by virtue of Connolly's having received hundreds of thousands of dollars in payments on Purchased Accounts from its clients and due to Connolly's having used such funds instead of having satisfied its duty to hold such funds in trust and safekeeping, as the property of Durham, and immediately turn over to Durham the identical form of payment received by Connolly,

(b)     due to a breach of section 5.1.1 of the Factoring Agreement as a result of the failure of various account debtors, including Santander, to pay outstanding accounts within ninety (90) days after the date of invoice,

(c)     due to Connolly's having breached its duty to repurchase, by paying to Durham the then-unpaid Face Amount and any unpaid fees related to the Purchased Accounts, on demand, any Purchased Account which remained unpaid beyond the "Late

Payment Date" (*i.e.*, 90 days after the due date of an account) which Connolly has failed to do, and

    (d) Durham legitimately having deemed itself insecure with respect to Connolly's performance of its obligations, due to, among others, Connolly's wholesale resignation of its officers and directors, the termination of employment by all of the law firm's principals, a termination of all staff and employees of the law firm, the removal of files and other electronic and non-electronic data by Connolly's clients, including Santander, the cessation of business in the State of Florida and Massachusetts, and the opening up of new and purportedly independent law firms by each of the principals of the law firm, including Steven Ablitt.

(Each an "Event of Default.")

 14. Given Connolly's defaults under the Factoring Agreement, Durham became entitled to declare all obligations, including all outstanding Purchased Accounts, immediately due and payable. *See*, Factoring Agreement at § 5.2.

 15. Connolly agreed to pay Durham's attorney's fees and costs incurred by Durham in enforcing the Factoring Agreement. *See*, Factoring Agreement at § 4.15.

 B. <u>The Maasai relationship with Connolly</u>.

 16. On or about December 21, 2007 Connolly (through its predecessor name, Ablitt & Charlton, P.C.) executed and delivered to Sovereign Bank that certain promissory note in the principal amount of $1,500,000.00. In connection therewith, Connolly pledged as collateral, *inter alia*, all of Connolly's present and future accounts receivable (collectively, "Maasai Loan Documents").

17. On or about September 14, 2010, Sovereign Bank, as the seller, and DCR Mortgage IV Sub I, LLC ("DCR Sub I"), as the purchaser, entered into that certain Asset Sale Agreement, whereby DCR Sub I purchased all of Sovereign Bank's right, title, and interest in outstanding obligations owing by Connolly.

18. On or about January 28, 2013, DCR Sub I, as the assignor, and DCR Mortgage IV Sub III, LLC ("DCR Sub III"), as the assignee, entered into that certain Assignment of Loan Documents and Assumption Agreement, whereby DCR Sub I assigned to DCR Sub III all of DCR Sub I's right, title, and interest in outstanding obligations owing by Connolly.

19. On or about February 7, 2013, DCR Sub III, as the seller, and Maasai, as the purchaser, entered into that certain Loan Sale Contract, whereby DCR Sub III sold to Maasai all of DCR Sub III's rights, title, and interest in outstanding obligations owing by Connolly. A true and correct copy of the Loan Sale Contract is attached hereto as **Exhibit "4,"** and is incorporated herein by reference.

20. Connolly has breached the Maasai Loan Documents by:

(a) Failing to comply with section 11.1 of the Commercial Revolving Line of Credit Promissory Note by failing to pay principal and interest on demand; and

(b) Failing to comply with sections 1.6, 2.11, 2.12, 2.16, 2.18, 3.2.1, 3.2.3, 3.2.4 and 3.2.11 of the Security Agreement.

21. As a result of Connolly's breach of the Maasai Loan Documents, Maasai became entitled to collect from Connolly's clients, including Santander, all monies owing to Connolly for provision of legal services.

## Count I
## Durham and Maasai's Claim for
## Breach of Statutory Duty to Pay Accounts Against Defendant Santander

22. Durham and Maasai reallege and readopt paragraphs 1 through 21 above as if fully stated herein.

23. This is an action under 9-406(a) of the Uniform Commercial Code.

24. Pursuant to 9-406 of the Uniform Commercial Code and as agreed between Durham and Connolly in the Factoring Agreement, Durham was entitled to notify Santander of Durham's right to receive payment.

25. Durham did in fact notify Santander of Durham's right to receive payment. Specifically, on or about January 7, 2014, Durham transmitted a letter to Santander advising it that the Purchased Accounts had been assigned to Durham and that Santander should pay all existing and future invoices only to Durham (the "Notice of Assignment to Durham"). A true and correct copy of the Notice of Assignment to Durham is attached hereto as **Exhibit "5,"** and is incorporated herein by reference.

26. The Notice of Assignment to Durham contained the statutorily required information informing Santander of the assignment of the invoices by Connolly to Durham and to whom payment was to be made (*i.e.*, to Durham).

27. Pursuant to 9-406 of the Uniform Commercial Code and as agreed between Maasai's predecessor-in-interest and Connolly in the loan documents accompanying the promissory note, Maasai was entitled to notify Santander of Maasai's right to receive payment.

28. Maasai did in fact notify Santander of Maasai's right to receive payment. Specifically, on or about July 8, 2014, Maasai transmitted a letter to Santander advising it that the Purchased Accounts had been assigned to Maasai and that, inasmuch as Maasai and Durham are

affiliated entities, Santander should pay all existing and future invoices only to Durham, as Maasai's designee (the "Notice of Assignment to Maasai"). A true and correct copy of the Notice of Assignment to Maasai is attached hereto as **Exhibit "6,"** and is incorporated herein by reference.

29. The Notice of Assignment to Maasai contained the statutorily required information informing Santander of the assignment of the invoices by Connolly to Durham and to whom payment was to be made (*i.e.*, to Durham, as Maasai's designee).

30. Between December 4, 2013 and July 3, 2014, Santander wrongfully paid to Connolly, rather than paying to Durham, monies to satisfy certain Purchased Accounts totaling $227,858.50 (the "Wrongfully Paid Accounts").

31. In addition, Santander currently owes $62,656.33 on additional accounts besides the Wrongfully Paid Accounts for which Santander has not remitted payment (the "Outstanding and Unpaid Accounts").

32. As a result of Santander's receipt of the Durham Notice of Assignment and Santander's receipt of the Maasai Notice of Assignment, Santander's obligations to pay Durham and Maasai under 9-406 of the Uniform Commercial Code were triggered. Specifically, 9-406 of the Uniform Commercial Code states:

> . . . an account debtor [Santander] on an account . . . may discharge its obligation by paying the assignor [Connolly] **until, but not after,** the account debtor [Santander] receives a notification, authenticated by the assignor [Connolly] or the assignee [Durham / Maasai], that the amount due or to become due has been assigned and that payment is to be made to the assignee [Durham / Maasai]. **After receipt of the notification,** the account debtor [Santander] **may discharge its obligation by paying the assignee** [Durham / Maasai] **and may not discharge the obligation by paying the assignor** [Connolly].

(Emphasis supplied.)

33. Pursuant to the Notice of Assignment to Durham and the Notice of Assignment to Maasai, Santander was obligated to pay Durham on behalf of both Durham and Maasai, for each of the Wrongfully Paid Accounts and the Outstanding and Unpaid Accounts on the date of maturity of each account.

34. After receipt of Durham's Notice of Assignment and Maasai's Notice of Assignment, Santander was not legally permitted to satisfy its obligations to pay the Wrongfully Paid Accounts or the Outstanding and Unpaid Accounts by paying any party other than Durham, on behalf of both Durham and Maasai and, to date, Durham, on behalf of both Durham and Maasai, has yet to receive any payment towards either the Wrongfully Paid Accounts or the Outstanding and Unpaid Accounts.

35. Santander owes Durham and Maasai, and Durham and Maasai have suffered damages in the sum of at least $290,514.83 on both the Wrongfully Paid Accounts and the Outstanding and Unpaid Accounts, as well as any other obligations owing by Santander to Connolly in respect to which neither Durham nor Maasai are currently aware.

36. Durham and Maasai, through their counsel, issued a letter dated July 8, 2014, attached hereto as Exhibit "6," demanding that Santander satisfy its obligations to Durham and Maasai.

37. Santander has failed to either respond to the July 8, 2014 letter or pay Durham and Maasai any portion of the $290,514.83.

WHEREFORE, Durham and Maasai respectfully request this Court to enter a judgment against Santander in the amount of $290,514.83, together with prejudgment interest, as may be authorized, attorney's fees and costs, as well as such other relief as the Court deems just and proper.

Respectfully submitted,

| | |
|---|---|
| ___/s/ Sigmund J. Roos_____ | MICHAEL W. ULLMAN |
| SIGMUND J. ROOS | Florida Bar No. 259667 |
| BBO No. 541754 | ULLMAN & ULLMAN, P.A. |
| BLOCK & ROOS, LLP | *Attorneys for Durham Commercial Capital* |
| *Attorneys for Durham Commercial Capital* | *Corp. and Maasai Holding, LLC* |
| *Corp. and Maasai Holding, LLC* | 150 East Palmetto Park Road, Suite 700 |
| 10 High Street, Suite 905 | Boca Raton, Florida 33432 |
| Boston Massachusetts 02110 | Telephone:  (561) 338-3535 |
| Telephone: (617) 223-1900 ext. 12 | Facsimile:   (561) 338-3581 |
| Mobile: (978) 729-4681 | Email: michael.ullman@uulaw.net |
| Email: roos@blockroos.com | *(Admitted Pro Hac Vice)* |

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Durham and Maasai hereby demand a jury trial on all of the issues so triable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above document was served upon the attorney of record for each other party by electronic means through the Court's ECF transmission facilities on August 27, 2014.

By: /s/ Sigmund J. Roos____

F:\wp51 14\140026\Pleadings\Answer Affirmative Defenses and Counterclaim(8-26-14).FINAL.doc.docx