UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

————————————————————————————————

| | |
|---|---|
| SANTANDER BANK, N.A., ) | |
| ) | |
| **Plaintiff and** ) | |
| **Counterclaim-Defendant,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **14-13133-FDS** |
| ) | |
| DURHAM COMMERCIAL CAPITAL CORP., ) | |
| ) | |
| **Defendant and** ) | |
| **Counterclaim-Plaintiff, and** ) | |
| ) | |
| CONNOLLY, GEANEY, ABLITT & ) | |
| WILLARD, P.C., ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

————————————————————————————————

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

SAYLOR, J.

This lawsuit arises out of a factoring agreement between defendant Durham Commercial

Capital Corp. and defendant Connolly, Geaney, Ablitt, & Willard, P.C. ("CGAW").  Under the

agreement, CGAW, a law firm, assigned its accounts receivable to Durham.[1]  Plaintiff Santander

Bank, N.A., a former client of CGAW, seeks a declaratory judgment that it has no obligation to

pay Durham (the assignee) for legal services performed by CGAW (the assignor) for which

Santander paid CGAW directly.  Santander also asserts a claim for common-law conversion

---

[1] "Factoring is a process by which a business sells to another business, at a small discount, its right to collect money before the money is paid. Factoring is a financing tool that reduces the amount of working capital a business needs by reducing the delay between the time of sale and the receipt of payment." *Houston Lighting & Power Co. v. Wharton*, 101 S.W.3d 633, 636 (Tex. App. 2003).

against Durham, and a claim against both defendants for unfair or deceptive trade practices under Mass. Gen. Laws ch. 93A.

In response to Santander's complaint, Durham filed a counterclaim alleging that Santander breached its statutory duty to pay the fees due on its accounts assigned to Durham.

Santander and Durham have filed cross-motions for summary judgment.  Only Santander's claims against Durham and Durham's counterclaims against Santander are at issue. For the reasons stated below, both motions will be denied.

## I.    Background

### A.    Factual Background

Unless otherwise stated, the basic facts of the case are not in dispute.

In June 2011, plaintiff Santander Bank retained the law firm of Connolly, Geaney, Ablitt, & Willard, P.C. to represent it in connection with various claims related to defaulted loans. (Hobson Aff. ¶ 5, Ex. A).[2]  CGAW's representation of Santander was formalized in a written "Legal Services Agreement."  (Hobson Aff. ¶ 5).  The agreement contained the following provisions:

> 1.3.  [Santander] shall be the named client and shall be the sole owner of all deliverables submitted to [Santander] hereunder, including all documents, tiles [*sic*; probably "files"], diskettes, writings and other works of whatever nature generated or produced by Counsel in connection with the Services, excluding any pre-existing materials or other property of Counsel.  Such deliverables shall be considered a work made for hire by Counsel on behalf of [Santander], and shall be considered part of [Santander's] information to be kept confidential pursuant to Section 6 of this Agreement . . . .

> 2.6.  All invoices must identify [Santander's] loan number, borrower name and address of property (if part of the collateral).  A detailed itemization of all fees, permitted expenses and disbursements must also be provided along with a description of the specific Services performed . . . .

---

[2] At the time of the agreement, Santander was known as Sovereign Bank, and CGAW was known as Ablitt & Scofield, P.C.  For the sake of simplicity, the Court will refer to the parties throughout as "Santander" and "CGAW."

> 6. Confidentiality Agreement. Counsel agrees to the terms and conditions of the Confidentiality Agreement in Exhibit A, which is attached to and made a part of this Agreement . . . .

(Hobson Aff. Ex. A). The "Confidentiality Agreement" referred to in section 6 and attached to the legal services agreement provided:

> 1. The term "Information" refers to . . . customer information, . . . and all technical, financial, business, or other information of the Bank, whether received prior to, on or after the date of this Agreement, orally, in writing, in electronic format, by electronic or other means.
>
> 2. . . . Consistent with the provisions of the [Gramm-Leach-Bliley Act] and such other laws and regulations, Counsel shall implement appropriate measures designed to satisfy the requirements of GLBA, including to: . . . (iv) protect against unauthorized access to or use of such information that could result in substantial harm or inconvenience to any customer; and (v) take appropriate action to address incidents of unauthorized access to Nonpublic Personal Information, including, without limitation, notifying the Bank as soon as possible of any such incident. . . .
>
> 3. Counsel agrees to: (a) keep the Information confidential and secure; (b) restrict disclosure of the Information solely to its officers, employees, affiliates and agents with a need to know such Information for purposes of the business dealings between Counsel and Bank . . . (c) not disclose to any other person or copy the Information without the approval of Bank; (d) use the Information solely for purposes of the business dealings between Counsel and Bank and not in any way directly or indirectly detrimental to Bank . . . .

(*Id.*).

Durham Commercial Capital Corp. "factors" accounts receivable—that is, it purchases accounts receivable at a discounted price from its customers. In exchange, Durham's customers transfer and assign those accounts receivable to Durham, which then owns the rights to any payments received. (Gentilli Aff. Ex. D, at 7-8).

On November 7, 2012, Durham entered into a factoring agreement with CGAW and received a security interest in certain CGAW accounts in return. (McGrain Dep. 22; Gentilli Aff. Ex. F). In order to submit an account for factoring, CGAW would forward to Durham copies of the invoices it desired to be factored. (McGrain Dep. 22-24; Connolly Dep. 18; Mosher Dep. 9).

If Durham approved, it would purchase the account from CGAW.  (*Id.*).

Santander's accounts were among those factored by Durham.  In total, CGAW sent Durham copies of at least 160 separate invoices sent to Santander.  (Gentilli Aff. ¶ 5, Ex. E). Those invoices included the names of the borrowers on the defaulted loans and a description of the services performed by CGAW.  (Gentilli Aff. Ex. E).

On September 10, 2013, Durham sent Santander the following letter:

Dear Business Colleague,

I am pleased to inform you that Connolly, Geaney, Ablitt, & Willard, PC has attained Durham Commercial Capital Corp (Durham) as a source of capital and accounts receivable processor.  This will enable Connolly, Geaney, Ablitt & Willard, PC to accommodate the growth and development of their business while maintaining a high level of customer service.

As part of the program the accounts receivable of Connolly, Geaney, Ablitt & Willard, PC have been assigned to Durham and are processed through Durham.  Therefore payments for invoices should be made payable to and mailed directly to:

Durham Commercial Capital Corp
for the account of:
Connolly, Geaney, Ablitt & Willard, PC
101 Sully's Trail, Bldg 20
Pittsford, NY 14534

This assignment has been duly recorded under the Uniform Commercial Code.  Please make the proper notations on your ledger and acknowledge receipt of this assignment by signing at the place provided and fax a copy to Durham at [].  Payment to any other party or address will not constitute payment.  A hard copy will be made available to you at your request.  This notice and instructions herein will remain in full force and effect until you are notified to the contrary in a writing signed by Durham Commercial Capital Corp.

Should you have any questions concerning this letter or your billing, please feel free to call Durham at the below listed number.  Thanking you in advance for your cooperation.

Sincerely,
Timothy Mura
Durham Commercial Capital Corp and Connolly, Geaney, Ablitt & Willard, PC

AGREED AND ACCEPTED – Sovereign Bank, N.A.

Signed:  _____          Date:  _____

By:  _____          Phone:  _____

Email:  _____          Fax:  _____

(Def. App. Tab 5).

Santander received the letter on September 13, 2013, but never expressly agreed to or accepted its terms.  (Def. Tab 10 ¶¶ 1, 5).  After receiving the letter, Santander did not begin making payments to Durham, but instead continued to make payments directly to CGAW. Although the record does not indicate the total amount of payments made, at least five checks were issued from CGAW to Durham in November 2013, each appearing to correspond to an ACH payment made from Santander to CGAW.  (Supp. Gentilli Aff. Ex. K).

Durham sent a second letter to Santander on December 5, 2013, and a third on January 7, 2014.  (Hobson Aff. ¶ 11, Ex. C; Gentilli Aff. Ex. F, at 14-19).  Both letters were virtually identical to the September 10, 2013 letter.  Santander received those letters as well, but again continued to pay CGAW directly.  (Def. App. Tab 10 ¶¶ 7-15).

On May 22, 2014, Durham sent Santander a fourth notification, this time by e-mail, concerning the account payments assigned to Durham.  (Hobson Aff. ¶ 14, Ex. D).  Santander responded to that e-mail by informing Jay Connolly at CGAW that it would not pay a third party for services performed by CGAW.  (*Id.*, Ex. B).  Shortly thereafter, in early June 2014, Joanne Pucek of Santander also informed Durham Chief Financial Officer Tim Mura that Santander would not pay Durham for the invoices it received from CGAW.  (*Id.*).  Santander asserts that the May e-mail and June conversation were the first instances in which Durham contacted it concerning its failure to pay Durham directly.

Also in May 2014, Durham placed Brian Mosher on-site at CGAW.  (Mosher Dep. 7-8).

The parties dispute the extent of Mosher's role during the time he was at the firm.  Santander claims that Mosher functioned as the firm's "de facto" CFO; Durham contends that Mosher's assignment was merely to evaluate CGAW's accounts.  Although the parties appear to agree that Mosher received signature authority on CGAW's operating accounts, they dispute whether he had access to its client trust accounts, its client files, or confidential client information contained on its "CaseAware" server.  (Def. Opp. ¶¶ 16-21).

On June 11, 2014, Santander sent CGAW a check in the amount of $13,530, which Santander asserts represented pre-payment for anticipated costs for future work.  (Hobson Aff. ¶ 18, Ex. F).  Dunham disputes that the check was an advance payment, and contends instead that it was payment for an assigned account receivable.  (Mosher Dep. 26-33).  The parties agree that Mosher, on behalf of Durham, took possession of the check and forwarded it to Durham, which deposited it into its own bank account.  (Gentilli Aff. Ex. I, ¶¶ 1-2).

CGAW filed for bankruptcy in October 2014.

**B.    Procedural Background**

On July 28, 2014, Santander filed a complaint naming Durham and CGAW as defendants.  The operative complaint is now Santander's second amended complaint, filed on December 5, 2014.  It includes a claim for a declaratory judgment that Santander had no obligation to pay Durham on the accounts assigned by CGAW (Count One); a claim for indemnification against CGAW (Count Two); a common-law claim for conversion against Durham (Count Three); and a claim against both Durham and CGAW for unfair or deceptive acts or practices in violation of Mass. Gen. Laws Ch. 93A (Count Four).

Durham has counterclaimed against Santander, asserting that Santander breached its duty under Mass. Gen. Laws ch. 106 § 9-406 to pay Durham the amounts assigned to it by CGAW.

Santander has moved for partial summary judgment on Counts One, Three, and Four against Durham.[3]  Durham has cross-moved for summary judgment on its counterclaim.

## II.   Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted).  Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Essentially, Rule 56[ ] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id*. at 256-57.

## III.   Analysis

### A.   Whether Santander is Obligated to Pay Durham for the Accounts Assigned

The central issue is whether Santander remains obligated to pay Durham on the accounts

---

[3] Counts Two and Four against CGAW were stayed following the filing of the bankruptcy petition on October 16, 2014.

receivable assigned to Durham even though it paid the amounts in question directly to CGAW.

Durham asserts that Santander remains obligated in full under § 9-406(a) of the Massachusetts

Uniform Commercial Code; Santander seeks a declaratory judgment that is not so obligated.

Section 9-406(a) states:

> Subject to subsections (b) through (i), an account debtor on an account, chattel paper, or a
> payment intangible may discharge its obligation by paying the assignor until, but not
> after, the account debtor receives a notification, authenticated by the assignor or the
> assignee, that the amount due or to become due has been assigned and that payment is to
> be made to the assignee.  After receipt of the notification, the account debtor may
> discharge its obligation by paying the assignee and may not discharge the obligation by
> paying the assignor.

Mass. Gen. Laws ch. 106, § 9-406(a).[4]

The parties do not dispute that Santander is an "account debtor" under the statute, that

Santander made payments directly to CGAW, and that Santander has made no payments to

Durham for the accounts assigned.

Santander, however, contends that it is not obligated to Durham for three reasons:  (1)

because the confidentiality provisions in Santander's contract for legal services with CGAW

constitute a "practical impairment" of the assignment; (2) because the assignment of CGAW's

accounts receivable is unenforceable as against public policy; and (3) because Durham's

purported notice of assignment to Santander was ineffective.

### 1.      The Confidentiality Provisions of the Legal Services Agreement Do Not Invalidate the Assignment

Santander first attacks the assignment on the grounds that the confidentiality provisions

in its legal services agreement with CGAW constitute a "practical impairment" preventing

assignment of the accounts.

---

[4] What is now Mass. Gen. Laws ch. 106 § 9-406 was originally enacted as § 9-405 in 2001.  That section
was the successor to former sections 9-318(3) and 9-318(4) of the UCC.  Effective July 1, 2013, the legislature
renumbered then-section 9-405 as section 9-406 without making any changes to its content.

Section 9-406(d)(1) renders ineffective any term in an agreement between an account debtor and an assignor that "prohibits, restricts, or requires the consent of the account debtor . . . to the assignment or transfer of, or the creation, attachment, perfection, or enforcement of a security interest in, the account. . . ."  Mass. Gen. Laws ch. 106 § 9-406(d)(1).  Section 9-406(d)(2) further makes ineffective any term in an agreement that provides that the assignment "may give rise to a default" on the part of the assignor.  *Id.* at §9-406(d)(2).  Comment 5 to §9-406 explains the effect of subsection (d):

> Like former Section 9-318(4), subsection (d) provides that anti-assignment clauses are "ineffective."  The quoted term means that the clause is of no effect whatsoever; the clause does not prevent the assignment from taking effect between the parties and the prohibited assignment does not constitute a default under the agreement between the account debtor and assignor.  However, *subsection (d) does not override terms that do not directly prohibit, restrict, or require consent to an assignment but which might, nonetheless, present a practical impairment of the assignment.*  Properly read, however, subsection (d) reaches only covenants that prohibit, restrict, or require consents to assignments; it does not override all terms that might "impair" an assignment in fact.

*Id.*, cmt. 5 (emphasis added).

Santander contends the confidentiality provisions in its legal services agreement with CGAW practically impaired the law firm's ability to assign the accounts, because it could not do so without violating the legal services agreement.  Thus, according to Santander, the assignment is void and unenforceable.

The Court assumes, without deciding, that the confidentiality provisions do in fact constitute an impairment to the fulfillment of the Durham-CGAW factoring agreement.  However, the existence of a "practical impairment" in the agreement between an account debtor and an assignor does not mean that the assignment is ineffective.  Instead, as comment five explains, those terms themselves are not overridden or extinguished by subsection (d); that subsection overrides only terms that directly prohibit assignment.  Put another way, although a

contractual provision giving to the practical impairment remains enforceable, it does not

invalidate or make void the assignment or the account debtor's obligation to pay the assignee

under § 9-406.

Further, comment five includes an example—which Santander curiously characterizes as

"not particularly germane"—that is on point:

> Buyer enters into an agreement with Seller to buy equipment that Seller is to manufacture according to Buyer's specifications.  Buyer agrees to make a series of prepayments during the construction process.  In return, Seller agrees to set aside the prepaid funds in a special account and to use the funds solely for the manufacture of the designated equipment.  Seller also agrees that it will not assign any of its rights under the sale agreement with Buyer.  Nevertheless, Seller grants to Secured Party a security interest in its accounts.  Seller's anti-assignment agreement is ineffective under subsection (d); its agreement concerning the use of prepaid funds, which is not a restriction or prohibition on assignment, is not.  *However, if Secured Party notifies Buyer to make all future payments directly to Secured Party, Buyer will be obliged to do so under subsection (a) if it wishes the payments to discharge its obligation.*  Unless Secured Party releases the funds to Seller so that Seller can comply with its use-of-funds covenant, Seller will be in breach of that covenant.

*Id.* (emphasis added).  Here, the confidentiality provisions in the legal-services agreement—like

the use-of-funds agreement in the example—are not made ineffective by subsection (d); they

remain enforceable.  However, the confidentiality provisions do not bar the assignment from

being made, and do not preclude the account debtor's obligation to make payments to the

assignee following notification.

In short, although CGAW may have breached the confidentiality provisions of its

agreement with Santander, those provisions do not excuse Santander's failure to make payment

to Durham for the accounts assigned.

### 2.      The Factoring Agreement is Not Void as Against Public Policy

Santander next contends that factoring a law firm's accounts receivable without client

consent violates Massachusetts public policy, and that the assignment is therefore unenforceable

10

against the client.

Santander asserts that Massachusetts has a public policy in favor of protecting client information, pointing primarily to Rules 1.6 and 1.8 of the Massachusetts Rules of Professional Conduct governing attorney conduct.  Rule 1.6(a) provides:  "A lawyer shall not reveal confidential information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized to carry out the representation or the disclosure is permitted by paragraph (b)."  Rule 1.8(b) further provides:  "A lawyer shall not use confidential information relating to representation of a client to the disadvantage of the client or for the lawyer's advantage or the advantage of a third person, unless the client gives informed consent, except as permitted or required by these Rules."[5]  The rules are certainly relevant to the existence and scope of Massachusetts public policy, even though they do not give rise to a private cause of action.  *McLaughlin v. Amirsaleh*, 65 Mass. App. Ct. 873, 880, 885 (2006), *rev. den.* 447 Mass. 1103 (2006).  And it is clear that Massachusetts has a policy in favor of protecting the information clients provide to their lawyers from unauthorized disclosure to third parties.

The parties do not dispute that the factoring agreement required CGAW to forward copies of the invoices to Durham; that CGAW complied with that portion of the agreement; and that those invoices contained information regarding the names of Santander borrowers, their addresses, their account numbers, and a description of actions taken by CGAW in representing Santander.  Furthermore, the parties do not dispute that those actions were undertaken without Santander's informed consent.

---

[5] Santander also contends that a factoring agreement involving a law firm violates Rule 5.4, which prohibits fee-sharing with non-lawyers.  As other courts have held, however, assignments of law-firm account receivables do not constitute "fee-sharing."  *See, e.g.*, *Counsel Fin. Servs., L.L.C. v. Leibowitz*, 2013 WL 3895331, at *7-8 (Tex. App. 2013), *reh'g overruled* (2013), *rev. den.* (2014) ("There is a significant difference between sharing legal fees with a non-lawyer and paying a debt with legal fees.").

Durham contends that the information in the invoices was not actually confidential because it was made public in the pleadings and filings CGAW generated for Santander.  The rules of professional conduct define "confidential information" to include, among other things, "information that the lawyer has agreed to keep confidential."  Mass. R. Prof. C. 1.6, Comment 3A.  CGAW specifically agreed, through the legal services agreement and attached confidentiality agreement, not to disclose such information without Santander's consent.  While some of the information may have been later disclosed, there is no evidence that all of it was.  Regardless, in complying with the factoring agreement, CGAW revealed client confidences, and did so for its own financial benefit.  By doing so, it appears to have violated Rules 1.6 and 1.8 and the public policy they reflect.

Nonetheless, it does not necessarily follow that because certain provisions of the factoring agreement may have violated public policy, the assignment of the accounts receivables is void or unenforceable.  In determining whether to enforce a contract found to violate public policy, it is relevant whether the allegedly improper behavior was a "material or only an incidental part" of the performance of the contract.  *Town Planning & Engr. Assocs. v. Amesbury Specialty Co.*, 369 Mass. at 745-46.  Here, as in *Counsel Fin. Servs., L.L.C. v. Leibowitz*, "the portions of the security agreement which allegedly violate the disciplinary rules are tangential to the main or essential purpose of the agreement, which is the pledge of collateral to secure the loan."  2013 WL 3895331, at *9 (Tex. App. July 25, 2013).  The two actions—disclosing confidential information and assigning accounts receivable—are related, but they are not so intertwined that one cannot be accomplished without the other.

Furthermore, the very existence of section 9 of the Massachusetts Uniform Commercial Code evidences a public policy in favor of the creation and assignment of security interests.  In

the context of factoring agreements, the ability to receive funds from a factor allows a firm access to capital and reduces the firm's working capital necessary to its operations.  For example, a law firm's ability to factor its accounts receivable may allow the firm to begin work or incur expenses on behalf of a client that the firm or client otherwise would not be able to advance.

Taking the facts in the light most favorable to Santander, it appears that CGAW violated the confidentiality provisions of its contract with Santander and the individual lawyers violated the rules of professional conduct.[6]  Santander may well have a claim for legal malpractice or other wrongdoing against the individual lawyers who committed the violations; their ethical obligations run to them personally, and presumably were not discharged by the bankruptcy of the law firm.  Nonetheless, "Massachusetts decisions reveal an unmistakable reluctance to let a violation of public policy spoil entirely an otherwise valid agreement." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 188 F. Supp. 2d 115, 124-25 (D. Mass. 2002).  The assignment of Santander's accounts receivable is enforceable, even though client confidences may have been disclosed in the course of that factoring relationship.

### 3.      Durham's Notice to Santander Was Effective

Santander also contends that even if the assignment is enforceable, Durham's letters were ineffective as notice of the assignment.

There is little case law as to what constitutes adequate notice to an account debtor under § 9-406.  The statute itself requires an "authenticated" notification to the account debtor that (1) "the amount due or to be due has been assigned" and (2) "payment is to be made to the assignee." *See* Mass. Gen. Laws ch. 106 § 9-406(a).  Notice is ineffective if it does not

---

[6] The law firm could also be found liable for the conduct of the individual lawyers; as a general matter, professional misconduct by attorneys may be attributable to their law firms under principles of agency.  *See Kourovacilis v. American Federation of State, County, and Municipal Employees*, 65 Mass. App. Ct. 521, 534 (2006).

"reasonably identify the rights assigned."  Mass. Gen. Laws ch. 105 § 9-406(b)(1).

Santander contends that because the letters requested it to sign below the words

"AGREED AND ACCEPTED," it did not have an obligation to make payments to Durham

unless it chose to consent to doing so.  Santander argues that Durham's purported notice,

therefore, was ambiguous as to whether payment was to be made to Durham or CGAW.

Section 9-406 does not require the use of any particular "magic words" in order for a

notice of assignment to be effective.  *Bay Area Factors v. Target Stores, Inc.*, 987 F. Supp. 734,

737-38 (D. Minn. 1997) (citing *Municipal Trust and Sav. Bank v. Grant Park Community Dist.*,

171 Ill. App. 3d 289, 293 (1988)); *Hall Bros. Const. Co. v. Mercantile Nat. Bank of Indiana*, 642

N.E. 2d 285, 290 (Ind. App. Ct. 1994).  Instead, whether a particular notice is sufficient is a

"highly fact dependent" inquiry.  *Capital Funding Services, Inc. v. Novel Iron Works, Inc.*, 60

Mass. App. Ct. 1116, at *2 (2004) (citing *Hall Bros.*, 642 N.E. 2d at 290).

The facts here are sufficient to conclude that Durham's first letter to Santander, sent on

September 10, 2013, constituted effective notice under § 9-406.  First, the letter clearly identified

the rights assigned:  "[T]he accounts receivable of Connolly, Geaney, Ablitt & Willard, PC have

been assigned to Durham."  (Def. App. Tab 5).  Second, although a copy of the actual

assignment apparently was not included with the letter, the letter itself noted that "[t]his

assignment has been duly recorded under the Uniform Commercial Code. . . [a] hard copy will

be made available to you at your request." (*Id.*).  Third, the letter requested that payment be

made to Durham by mail or ACH transaction, and clearly stated that "[p]ayment made to any

other party or address will not constitute payment."  (*Id.*).

Santander's contention that the letter implied that its consent to pay Durham was

necessary for the assignment to be effective is unconvincing.  Section 9-406 does not require that

an account debtor consent to an assignment in order for the assignment to be effective.  *See* Mass

Gen. Laws. ch. 106 § 9-406.  Moreover, the body of the letter requests that Santander "[p]lease

make the proper notations on your ledger and acknowledge receipt of this assignment by signing

at the place provided. . ."  (Def. App. Tab 5).  Although poorly worded, when read in the context

of the full letter, the words "AGREED AND ACCEPTED" above the signature line—the "place

provided" referred to in the body of the letter—refer to Durham's request for an *acknowledgment*

of the notice of assignment, and not to Santander's consent to honor the assignment itself.

Thus, and as a matter of law, Durham's September 10, 2013 letter to Santander, which

Santander received on Sep. 13, 2013, was sufficient notice that Santander was required to pay

Durham directly on its accounts with CGAW.

### 4.        Durham Did Not Waive Its Claim Under § 9-406

Santander contends that even if Durham's notice was effective to invoke § 9-406,

Durham waived its rights because it knew Santander was making payments directly to CGAW

but did not object to those payments.

Waiver is "the voluntary relinquishment of a known right."  *Boston Helicopter Charter,*

*Inc. v. Agusta Aviation Corp.*, 767 F. Supp. 363, 372 (D. Mass. 1991) (citing *St. John Bros. Co.*

*v. Falkson*, 237 Mass. 399, 402 (1921)).  While a waiver may be express or implied, proof of an

implied waiver by conduct "must be unequivocal and must allow room for no other explanation

of the conduct of the person who allegedly is waiving a contractual right."  *Id.*

Here, the first notice sent to Santander specifically provided that "[t]his notice and

instructions herein will remain in full force and effect until you are notified to the contrary in a

writing signed by Durham Commercial Capital Corp."  (Def. App. Tab 5).[7]  Santander has

---

[7] This statement was repeated in Durham's letters of December 8, 2013, and January 7, 2014.

submitted no evidence of such a signed writing.  Santander has submitted some evidence from which a jury could conclude that Durham knew Santander was continuing to pay CGAW; namely, the checks Durham received from CGAW in November bearing "Santander ACH" notations.  However, Santander has not identified any further evidence that could give rise to an inference that Durham was waiving its rights under § 9-406, especially in light of the three written follow-up communications Durham sent stating the opposite.  Those communications sufficiently establish that Durham was not silently waiving its rights to receive payments directly from Santander.

In short, there is insufficient evidence for a reasonable jury to find that any such waiver occurred.

### 5.        Santander's Defense of Recoupment

Santander's final contention is that even if it remains obligated to Durham for the post-notice payments made to CGAW, that obligation is still subject to its claims for recoupment.  Specifically, Santander contends that the rights of Durham are subject to its recoupment claim against CGAW based on CGAW's alleged breach of its legal services agreement with Santander.

Mass. Gen. Laws ch. 106 § 9-404(a) details the rights of an account debtor to assert claims for recoupment or setoff against an assignee:

> Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subsections (b) through (e), the rights of an assignee are subject to:
>
>> (1) all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and
>>
>> (2) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.

16

Mass. Gen. Laws ch. 106 §9-404(a).  Here, it is undisputed that the account debtor (Santander) has not made an enforceable agreement not to assert defenses or claims.  Accordingly, the rights of the assignee (Durham) are subject to two things:  (1) the terms of the agreement between Santander and CGAW (that is, the legal services agreement) and any defense or claim in recoupment arising from the transaction that gave rise to the contract, and (2) any other defense or claim of Santander against CGAW that accrued before September 13, 2013, when Santander received an authenticated notification of the assignment.  It appears that Santander's claims (which are for breach of confidentiality, either under the agreement itself or the attorney ethical rules) arise either under the legal services contract itself or the transaction that gave rise to the contract, and therefore the first prong of § 9-404(a) is implicated, but not the second. *See* Mass. Gen. Laws ch. 106 §9-404.

Durham, however, contends that because Santander made payments—erroneously, to CGAW—Santander effectively waived any right to recoupment it might have had.  In Durham's view, the fact that a wrongful payment was made to CGAW changes the situation from one in which § 9-404(a) controls to one controlled only by § 9-406.  Durham's position is not based on anything in the statute, but rather a single sentence of dicta in an Eighth Circuit opinion and two subsequent opinions adhering to that dicta.  *See In re Apex Oil Co.*, 975 F.2d 1365, 1368 (8th Cir. 1992) ("Had [the account debtor] paid [the assignor], rather than engaged in a setoff, we would agree . . . that [§ 9-406] would control."); *National Trade Trust, Inc. v. Merrimac Const.*, 524 N.W.2d 14, 17 (Minn. App. 1994) ("An account debtor that erroneously pays the assignor after receiving notice of assignment waives any claim to a setoff against the assignor raised for the first time *after* the assigned debt was paid."); *Rockland Credit Finance v. Fenestration Architectural Products*, 2008 WL 1773234 (R.I. Sup. Ct. Mar. 12, 2008) (UCC § 9-404 applies

only "to situations where the debtor has made no payment at all and the assignee demands payment."); *but see Carlund Corp. v. Crown Center Redevelopment*, 849 S.W.2d 647, 651 (Mo. App. Ct. 1993) (holding defense of recoupment available to account debtor who, after notice, wrongfully paid subcontractor of assignor instead of assignee).

Notwithstanding the case law to the contrary, it seems clear under § 9-404 that Santander may assert a claim for recoupment against Durham despite having made payments to CGAW. The statute says nothing about waiver; rather, it states in plain terms that "the rights of an assignee are subject to . . . any defense or claim in recoupment." Mass. Gen. Laws ch. 106 § 9-404(a). Moreover, nothing in the language of § 9-404 suggests that it applies only when the account debtor has made no payment at all. Nor, at least on the present record, is there evidence that Santander has waived its rights under the contract as that term is understood under Massachusetts law. Proof of an implied waiver by conduct "must be unequivocal and must allow room for no other explanation of the conduct of the person who allegedly is waiving a contractual right." *Boston Helicopter*, 767 F. Supp. at 372 (citing *St. John Bros*, 237 Mass. at 402). Santander's conduct in making payments to Durham—although erroneous under §9-406—did not unequivocally waive its right to recoupment, especially where many of the facts giving rise to Santander's claim had yet to occur when the payments were made.[8]

Furthermore, § 9-406 merely provides that following notification of an assignment, the account debtor has lost the right to fulfill its obligations by paying the assignor and "may discharge its obligation by paying the assignee." Mass. Gen. Laws. ch. 106 § 4-906. The statute does not address the remainder of an account debtor's rights concerning its claims or defenses

---

[8] For example, Santander asserts that its recoupment defense is based, in part, on events surrounding the closure of CGAW in July 2014. (Pl. Opp. at 14; Hobson Aff. ¶¶ 14-17).

against either the assignor or assignee, nor does it state that the account debtor's obligation can be discharged only by payment to the assignee.  *See id.*

Having determined that Santander is not barred as a matter of law from asserting a claim for recoupment based on CGAW's alleged breach of the legal services agreement, it is clear that numerous issues of material fact remain with respect to that claim.[9]  Accordingly, Durham's motion for summary judgment on its counterclaim will be denied.

### 6.   Damages

The Court notes that despite extensive briefing by both parties, it appears that there is insufficient evidence in the record to determine the actual amount of the disputed payments made by Santander to CGAW.  Thus, even leaving aside Santander's claim for recoupment, the amount of Santander's obligation to Durham remains a disputed issue of material fact.

### B.   Santander's Conversion and Mass. Gen. Laws ch. 93A Claims

Santander has also moved for summary judgment on its claims against Durham for conversion (Count Three) and unfair or deceptive trade practices (Count Four).  The gist of Santander's claims is that Durham wrongfully seized and deposited Santander's June 11, 2014 check to CGAW for $13,350, which Santander asserts was intended for its client trust account as advanced fees for work not yet performed.  Durham, however, contends that the check was given to it by CGAW as payment for an account receivable that had become due for work performed.

As with many of the "facts" as stated by the parties in this case, the actual record evidence falls far short of the parties' assertions.  Because genuine issues of material fact remain

---

[9] The Court makes no finding as to the possible effect of the CGAW bankruptcy on Santander's right to recoupment.

in dispute, particularly with regard to the whether the check represented an advanced payment, summary judgment is inappropriate.

**IV.**     <u>**Conclusion**</u>

For the foregoing reasons,

1.      The motion for partial summary judgment of plaintiff Santander Bank, N.A., is

DENIED;  and

2.      The motion for summary judgment of defendant Durham Commercial Capital

Corp. is DENIED.

**So Ordered.**

<u>/s/ F. Dennis Saylor</u>
F. Dennis Saylor IV
Dated:  January 15, 2016                         United States District Judge